ALAN J. LAZARUS (State Bar No. 129767)
KRISTA L. COSNER (State Bar No. 213338)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Attorneys for Defendant
SMITHKLINE BEECHAM CORPORATION dba
GLAXOSMITHKLINE

E-filing

ORIGINAL
FILED

MAY 21 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

WDB

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

ROSENA PERKINS as Personal
Representative of MATTHEW PERKINS
(Deceased); ANNETTA THRASHER as
Personal Representative of VERNAL
OSENTON (Deceased); WILLIAM
WRIGHT as Personal Representative of
MARY WRIGHT (Deceased); JOAN
MOORE as Personal Representative of
DANNY MOORE (Deceased),

Plaintiffs,

v.

SMITHKLINE BEECHAM
CORPORATION dba
GLAXOSMITHKLINE and McKESSON
CORPORATION,

Defendants.

Case No. 08 2574

DECLARATION OF KRISTA L.
COSNER IN SUPPORT OF NOTICE
OF REMOVAL AND REMOVAL,
UNDER 28 U.S.C. § 1441(B)
(DIVERSITY) and 28 U.S.C. § 1441(C)
(FEDERAL QUESTION) OF
DEFENDANT SMITHKLINE
BEECHAM CORPORATION dba
GLAXOSMITHKLINE

I, KRISTA L. COSNER, declare:

1.      I am an attorney admitted to practice before all courts of the State of

California and am an Associate with Drinker Biddle & Reath, LLP, attorneys for

SMITHKLINE BEECHAM CORPORATION dba GLAXOSMITHKLINE ("GSK") in

this action. I make this Declaration based on my personal knowledge, in support of

Defendant GSK's removal of *Rosena Perkins, et al. v. GlaxoSmithKline, et al.*, San

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\400397\1

DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL          CASE NO.

1   Francisco Superior Court Case Number CGC 08-475435, to this Court. I would and

2   could competently testify to the matters stated in this Declaration if called as a witness.

3          2.     A true and accurate copy of the Complaint in this action is attached as

4   **Exhibit A**.

5          3.     A true and accurate copy of the Defendant's Answer to the Complaint

6   ("Answer") in this action is attached as **Exhibit B**. The Complaint and the Answer are

7   the only state court pleadings known to Defendant to have been filed in this action.

8          4.     A true and accurate copy of the Judicial Panel on Multidistrict Litigation's

9   Transfer Order, *In re Avandia Marketing, Sales Practices and Products Liability*

10  *Litigation*, MDL 1871 (E.D.P.A.) is attached as **Exhibit C**.

11         5.     The Declaration of Greg Yonko In Support Notice of Removal and

12  Removal Action Under 28 U.S.C. § 1441(b) (Diversity) and 28 U.S.C. § 1441(c) (Federal

13  Question) of Defendant SmithKline Beecham Corporation dba GlaxoSmithKline filed in

14  *F.C. Mitchell, et al. v. SmithKline Beecham Corporation dba GlaxoSmithKline, et al.*

15  (incorrectly sued as GlaxoSmithKline), U.S. District Court, Eastern District of California,

16  Case No: 08-CV-00542 MCE (EFB) is attached as **Exhibit D**.

17         6.     This is one of many cases that have been filed recently in both federal and

18  state courts across the country involving the prescription drug Avandia.

19         7.     Plaintiffs' counsel, The Miller Firm, has filed Avandia cases in both state

20  and federal courts, but only in the cases filed in California has The Miller Firm named

21  McKesson or any distributor as a defendant.

22         8.     GSK intends to seek the transfer of this action to that Multidistrict

23  Litigation, *In re Avandia Marketing, Sales Practices and Products Liability Litigation*,

24  MDL 1871, and shortly will provide the JPML with notice of this action pursuant to the

25  procedure for "tag along" actions set forth in the rules of the JPML.

26         9.     GSK is, and was at the time Plaintiffs commenced this action, a corporation

27  organized under the laws of the Commonwealth of Pennsylvania with its principal place

28  of business in Philadelphia, Pennsylvania, and therefore is a citizen of Pennsylvania for

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

2

1   purposes of determining diversity.

2        10.    Neither GSK nor McKesson has been served with the Complaint.

3        I declare under penalty of perjury under the laws of the United States of America that

4   the foregoing is true and correct.  Executed on this 21st day of May, 2008 in San Francisco,

5   California.

KRISTA L. COSNER

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\400397\1    DECLARATION OF KRISTA L. COSNER IN SUPPORT OF NOTICE OF REMOVAL    CASE NO.

# EXHIBIT A

**IMAGED** 

MAY 1 9 2008

**FILED**
Superior Court of California
County of San Francisco

MAY 1 6 2008

CASE MANAGEMENT CONFERENCE
GORDON PARK-LI, Clerk
BY: _____
Deputy Clerk

OCT 1 7 2008 -9:00 AM

DEPARTMENT 212

 SUMMONS ISSUED

| | |
|---|---|
| 1 | DAVID C. ANDERSEN (State Bar No. 194095) |
| 2 | THE MILLER FIRM, LLC |
| 3 | 108 Railroad Avenue |
| 4 | Orange, VA 22960 |
| 5 | Telephone: (540) 672-4224 |
| 6 | Facsimile: (540) 672-3055 |
| 7 | Email: dandersen@doctoratlaw.com |

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

| | | | |
|---|---|---|---|
| 10 | ROSENA PERKINS AS | : | |
| 11 | PERSONAL REPRESENTATIVE | : | Case No. **CGC-08-475435** |
| 12 | OF MATTHEW PERKINS | : | |
| 13 | (DECEASED) | : | COMPLAINT FOR DAMAGES |
| 14 | | : | AND JURY DEMAND **CGC-08-475435** |
| 15 | ANNETTA THRASHER AS | : | BASED ON: |
| 16 | PERSONAL REPRESENTATIVE | : | |
| 17 | OF VERNAL OSENTON | : | 1.   NEGLIGENCE |
| 18 | (DECEASED) | : | 2.   NEGLIGENT FAILURE |
| 19 | | : | TO ADEQUATELY WARN |
| 20 | WILLIAM WRIGHT AS | : | 3.   NEGLIGENCE *PER SE* |
| 21 | PERSONAL REPRESENTATIVE | : | 4.   NEGLIGENT |
| 22 | OF MARY WRIGHT (DECEASED): | : | MISREPRESENTATION |
| 23 | | : | 5.   BREACH OF EXPRESS |
| 24 | JOAN MOORE AS | : | WARRANTY |
| 25 | PERSONAL REPRESENTATIVE | : | 6.   BREACH OF IMPLIED |
| 26 | OF DANNY MOORE (DECEASED): | : | WARRANTY |
| 27 | | : | 7.   STRICT PRODUCTS LIABILITY |
| 28 | Plaintiffs, | : | DEFECTIVE DESIGN |
| 29 | | : | 8.   STRICT PRODUCTS LIABILITY |
| 30 | | : | MANUFACTURING |
| 31 | | : | AND DESIGN DEFECT |
| 32 | | : | 9.   STRICT PRODUCTS LIABILITY |
| 33 | | : | FAILURE TO ADEQUATELY |
| 34 | | : | WARN |
| 35 | | : | 10.  FRAUDULENT |
| 36 | SMITHKLINE BEECHAM | : | MISREPRESENTATION |
| 37 | CORPORATION | : | 11.  VIOLATIONS OF CALIFORNIA |
| 38 | d/b/a GLAXOSMITHKLINE AND | : | and UNFAIR TRADE PRACTICES |
| 39 | MCKESSON CORPORATION | : | AND CONSUMER PROTECTION |
| 40 | | : | LAW |
| 41 | | : | 12.  UNJUST ENRICHMENT |
| 42 | Defendants | : | 13.  WRONGFUL DEATH |
| 43 | | | 14.  SURVIVAL ACTION |
| 44 | | | 15.  LOSS OF CONSORTIUM |
| 45 | | | 16.  PUNITIVE DAMAGES |

1

COMPLAINT AND DAMAGES

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, individually and as representatives of the decedents' estates, by attorneys, THE MILLER FIRM, LLC, as and for the Complaint herein allege upon information and belief the following:

### INTRODUCTION

1.     Plaintiffs' decedents are all individuals who have consumed Defendant SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE'S drug Avandia®.

2.     This is an action to recover damages for personal injuries sustained by the Plaintiffs' decedents as the direct and proximate result of the wrongful conduct of the Defendants, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, (hereinafter referred to as "GSK") and MCKESSON CORPORATION (hereinafter referred to as "McKesson") in connection with the designing, developing, manufacturing, distributing, labeling, advertising, marketing, promoting, and selling of the widely-used diabetes prescription drug Avandia (rosiglitazone).

3.     Defendant GSK designed, researched, manufactured, advertised, promoted, marketed, sold, and/or distributed Avandia.

4.     Defendant McKesson is a corporation whose principal place of business is San Francisco, California.  McKesson distributed and sold Avandia in and throughout the State of California.

### JURISDICTION AND VENUE

5.     The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all

2

1    causes except those given by statute to other trial courts." The Statutes under which this action is

2    brought do not specify any other basis for jurisdiction.

3        6.    The California Superior Court has jurisdiction over the Defendants because, based

4    on information and belief, each is a corporation and/or entity organized under the laws of the State

5    of California, a foreign corporation or association authorized to do business in California and

6    registered with the California Secretary of State or has sufficient minimum contacts in California, or

7    otherwise intentionally avails itself of the California market so as to render the exercise of

8    jurisdiction over it by the California courts consistent with traditional notions of fair play and

9    substantial justice.

10        7.    Venue is proper in this Court pursuant to California Code of Civil Procedure Section

11    395 in that Defendant McKesson has its principal place of business in San Francisco.

12        8.    Furthermore Defendants GSK and McKesson have purposefully availed themselves

13    of the benefits and the protections of the laws within the State of California. Defendant McKesson

14    has its principal place of business within the state. Defendants GSK and McKesson have had

15    sufficient contact such that the exercise of jurisdiction would be consistent with the traditional

16    notions of fair play and substantial justice.

17        9.    Plaintiffs seek relief that is within the jurisdictional limits of the Court.

18                            **PARTY PLAINTIFFS**

19        10.    The Plaintiff Rosena Perkins, surviving spouse of decedent Matthew Perkins, is a

20    natural person and a resident of the State of Louisiana.

21        11.    The Plaintiff Annetta Thrasher, personal representative of decedent Vernal Osenton,

22    was a natural person and a resident of the State of Kentucky at the time of decedent's death.

12.     The Plaintiff William Wright, personal representative of decedent Mary Wright, was a natural person and a resident of the State of Kentucky at the time of decedent's death.

13.     The Plaintiff Joan Moore, surviving spouse of decedent Danny Moore, was a natural person and a resident of the State of Kentucky at the time of decedent's death.

## PARTY DEFENDANTS

14.     The Defendant, SmithKline Beecham Corporation d/b/a Glaxosmithkline, is a Pennsylvania corporation which has its principal place of business at One Franklin Plaza, 200 N. 16th Street, Philadelphia, Pennsylvania 19102.

15.     At all times material hereto, the Defendant, SmithKline Beecham Corporation d/b/a GlaxoSmithKline was engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

16.     Defendant GSK includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons action on their behalf.

17.     Plaintiffs' decedents are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of the defendant was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendant and its directors, officers and/or managing agents.

18.     Upon information and belief, the Defendant, SmithKline Beecham Corporation d/b/a Glaxosmithkline, was formed as a result of the merger of pharmaceutical corporations Glaxo Wellcome, Inc., and SmithKline Beecham, Inc.

4

19.    At all times material hereto, the Defendant, McKesson, was a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principal place of business in San Francisco, California.  McKesson is, and at all times material to this action was, authorized to do business, and was engaged in substantial commerce and business under the laws of the State of California.

20.    Defendant McKesson includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons action on their behalf.

21.    Plaintiffs' decedents are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of the defendant was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendant and its directors, officers and/or managing agents.

22.    At all times relevant to this action, Defendant McKesson packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted, and purported to warn or to inform users regarding the risks pertaining to, and assuaged concerns about the pharmaceutical Avandia.

## BACKGROUND
## STATEMENT OF THE CASE

23.    Type 2 diabetes is the most common form of diabetes, afflicting 18 million Americans and 200 million people worldwide.  This form of diabetes occurs when the body does not make enough insulin (a hormone needed to convert sugar and other food into energy) or cannot effectively use what it manages to produce.

COMPLAINT AND DAMAGES

24.     Avandia, created and marketed by GSK, is designed to treat persons with Type 2 diabetes by helping sensitize cells to insulin, thereby greatly assisting in blood-sugar control. It also is combined with metformin and sold as Advandamet. Only one other drug like it, pioglitazone, sold as Actos and Actoplus, made by Takeda Pharmaceuticals, is sold in the United States. In 2006, Avandia represented 37% of the U.S. market for oral diabetes treatments. Thus, the U.S. market for such drugs is huge, and Avandia faces only one competitor for that market.

25.     Avandia had a total U.S. sales of $2.2 billion in 2006, slightly less than the $2.6 billion in total U.S. sales for Actos, according to IMS Health, a healthcare information company. Approximately 13 million Avandia prescriptions were filled in the U.S. last year, with a one-month supply of Avandia selling for between $90 and $170. Avandia is critical to GSK, being the company's second largest selling drug after Advair (an asthma medication).

26.     GSK's product Avandia can cause heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death. In 2005, GSK performed an overview analysis of multiple Avandia trials, referred to as a "meta-analysis", and shared the preliminary results with the Food and Drug Administration ("FDA") in September 2005. Almost one year later, in August 2006, a more complete version of the meta-analysis was provided to the FDA. The results of GSK's analysis showed that patients taking Avandia had a 31% higher risk of adverse cardiovascular events such as heart attack due to obstruction of blood flow.

27.     GSK's Avandia can cause heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest and death. Not only was GSK aware of the dangers posed by Avandia, but data from these studies continued to be made available to GSK. On May 21, 2007, Dr. Steven E. Nissen, a prominent

6

1  cardiologist associated with the Cleveland Clinic, published a study in the New England Journal of

2  Medicine of his analysis of 42 studies comprising of approximately 28,000 people who took

3  Avandia.  These were on-line databases of GSK studies that were available on the Internet.  Dr.

4  Nissen's meta-analysis revealed a 43% higher risk of heart attack for those taking Avandia

5  compared to people taking other diabetes drugs or no diabetes medication, and people taking

6  Avandia suffered such adverse events at a rate of 1.99%, as opposed to 1.51% for other patients.

7  Further, Dr. Nissen's analysis showed a 64% elevated risk of death from cardiovascular disease.

8      28.    Despite GSK's longstanding knowledge of these dangers, Avandia's label only

9  warns about possible heart failure and other heart problems when taken with insulin.  GSK failed to

10  adequately warn and disclose to consumers that Avandia significantly increased the risk of adverse

11  cardiovascular events.   Furthermore, the proper and effective use of Avandia by Plaintiffs'

12  decedents was impaired due to GSK's failure to adequately warn of Avandia's defects and GSK's

13  failure to properly and adequately set forth such warnings in Avandia's drug labeling.

14      29.    GSK knew of these dangerous defects in Avandia from the many trials which it

15  performed and to which it had access and from its own analysis of these studies, but took no action

16  to adequately warn or remedy the defects, but instead concealed, suppressed and failed to disclose

17  these dangers.   Even in the face of Dr. Nissen's study, GSK continues to fail to warn of these

18  dangers through revised drug labeling.

19      30.    Not only has GSK failed to disclose in its labeling or advertising that Avandia is

20  actually dangerous for diabetics, GSK has represented and has continued to represent that they

21  manufacture and/or sell safe and dependable pharmaceuticals with safety as their first concern:

22      Like all innovative pharmaceutical companies, we carry out a series of clinical trials to test
23  each investigational drug for the potential to become a new medicine.

24

25                              ***

7

COMPLAINT AND DAMAGES

Phase I trials typically involve health volunteers. *These trials study the safety of the drug and its interaction with the body,* for example, its concentration and duration in the blood following various doses, and begin to answer such questions as whether the drug inhibits or amplifies the effects of other medicines that might be taken at the same time.

Phase II studies enroll patients with the illness an investigational drug is designed to treat. These trials evaluate whether the drug shows favorable effects in treating an illness and seek to determine the proper dose. They provide an opportunity to explore the therapeutic potential of the drug in what may be quite different illnesses. *The evaluation of safety continues.*

If Phase II results have been encouraging, Phase III trials, the largest part of a clinical-development program, go forward. *Phase III trials are designed to provide the substantial evidence of efficacy and safety required,* in addition to data from earlier-phase trials, before regulatory agencies will approve the investigational drug as a medicine and allow it to be marketed.

http://www.gsk.com/research/clinical/index/html (emphasis supplied).

31.    GSK has also strongly touted their commitment to improving the quality of life: "We have a challenging and inspiring mission: to improve the qualify of human life by enabling people to do more, feel better and live longer." http://www.gsk.com/about/index.htm.

32.    On May 21, 2007, the FDA issued a Safety Alert on Avandia showing that there is a potentially significant risk of heart attack and heart-related deaths in patients taking Avandia.

33.    Based on these representations, upon which both Plaintiffs' decedents and Plaintiffs' decedents' prescribing physicians relied, including the omission from the Avandia labeling of the danger of increased risk of adverse cardiovascular events as a result of ingesting Avandia, Plaintiffs' decedents purchased and ingested Avandia believing that the drug would be safe and effective.

34.    In fact, however, Avandia poses significant safety risks due to defects in its chemical design and inadequate labeling.

35.    To date, GSK has failed to adequately warn or inform consumers, such as Plaintiffs' decedents or Plaintiffs' decedents' prescribing physicians, of the known defects in Avandia that can

1    lead to increased risks of cardiovascular events, including but not limited to heart injury, excessive

2    fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the

3    heart leading to cardiac arrest, and death.

4          36.    As a result of GSK's omissions and/or misrepresentations, Plaintiffs' decedents and

5    other consumers ingested Avandia, and have suffered heart injury, excessive fluid retention, fluid-

6    overload disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac

7    arrest and sustained physical and financial damages including pain and suffering.

8          37.    Plaintiff Matthew Perkins (deceased) ingested Avandia for approximately (3) years

9    until his death.  Plaintiff Matthew Perkins died on May 17, 2007. Said cause of death was a heart

10    attack.

11          38.    Plaintiff Vernal Osenton (deceased) ingested Avandia for approximately (3) months

12    until his death.  Plaintiff Vernal Osenton died on July 8, 2007. Said cause of death was a heart

13    attack.

14          39.    Plaintiff Mary Wright (deceased) ingested Avandia.  Plaintiff Mary Wright died on

15    May 31, 2007. Said cause of death was heart failure and advance renal failure.

16          40.    Plaintiff Danny Moore (deceased) ingested Avandia for approximately (3) years until

17    his death.  Plaintiff Danny Moore died on January 16, 2008. Said cause of death was a heart attack.

18    
19                    **COUNT I**
            **NEGLIGENCE**
20          (Against Defendants GSK and McKesson)
21    
22          41.    Plaintiffs repeat and reiterate the allegations previously set forth herein.
23    
24          42.    That at all times hereinafter mentioned, Defendants were under a duty to exercise

25    reasonable care in the design manufacture, testing processing, marketing advertising, labeling,




1  packaging distribution, and sale of Avandia, and Defendants knew or should have known that

2  Avandia was not safe and that the user could sustain injuries and harm from the drug.

3    43.    That Defendants GSK and McKesson negligently, recklessly, grossly negligently,

4  wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others

5  in that they failed to exercise reasonable care and failed to fulfill the above-stated duty by the

6  manner that Defendants, directly and indirectly, advertised, marketed and promoted Avandia for the

7  treatment of diabetes, even though Avandia, in fact, was not reasonably safe for such use, and

8  furthermore, Defendants failed to adequately warn of the increased risk of serious cardiovascular

9  events which Defendants knew or should have known about.

10    44.    That Defendants GSK and McKesson negligently, recklessly, grossly negligently,

11  wantonly and willfully displayed a morally culpable and conscious disregard of the rights of others

12  by manufacturing, distributing, selling, advertising, marketing and promoting Avandia even though

13  such drug was not safe or effective for any purpose because it caused serious cardiovascular events

14  and by failing to adequately warn  the trusting public and prescribing health care providers of the

15  true, complete, and accurate risk and the lack of efficacy of Avandia.

16    45.    The aforesaid incident and the injuries sustained by Plaintiffs' decedents were

17  caused by or were contributed to by the negligence, recklessness, gross negligence, wantonness,

18  willfulness, and conscious and callous disregard of the safety of the public, including Plaintiffs'

19  decedents, on the part of Defendants in the design, manufacture, distribution, advertising, marketing

20  and promoting of Avandia as being safe and effective in the treatment of diabetes, and by inducing

21  the public, including Plaintiffs' decedents and Plaintiffs' decedents' prescribing physicians, to

22  believe that Avandia was effective in the treatment of the causes and symptoms of diabetes.

COMPLAINT AND DAMAGES

46.    Defendants GSK and McKesson failed to exercise reasonable care in the design, manufacture, testing, processing, marketing, advertising, labeling, packaging, rebranding, distribution and/or sale of Avandia in one or more of the following respects:

a.    Designing, marketing, processing, advertising, packaging, distributing and/or selling a product that defendants knew, or should have known, carried the risk of serious; life-threatening side effects;

b.    Failure to adequately test the product prior to placing the drug Avandia on the market;

c.    Failure to use care in designing, developing and manufacturing their product so as to avoid posing unnecessary health risks to users of such product;

d.    Failure to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Avandia;

e.    Failure to advise consumers, such as Plaintiffs, that consumption of Avandia could result in severe and disabling side effects, including but not limited to heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure and severe injury to the heart leading to cardiac arrest and death.

f.    Failure to advise the medical and scientific communities of the potential for severe and disabling side effects, including but not limited to heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, and severe injury to the heart leading to cardiac arrest, and death.

g.    Failure to provide timely and/or adequate warnings about the potential health risks associated with the use of Avandia; and

h.    Any and all other acts of negligence with respect to Avandia which may be shown at trial.

47.    That at all times hereinafter mentioned, upon information and belief, the above-described culpable conduct by Defendants GSK and McKesson was a proximate cause of injuries sustained by Plaintiffs' decedents.

48.    That as a result of the aforesaid occurrence, the injuries sustained by Plaintiffs' decedents resulting therefrom, Plaintiffs' decedents suffered extensive monetary and pecuniary losses and other compensatory damages were also incurred and paid out including necessary

11





1  medical, hospital, and concomitant expenses.  In addition, Plaintiffs' decedents were deprived of a

2  chance for safe and effective and/or successful treatment.

3      49.    By reason of the foregoing, Plaintiffs' decedents sustained damages in a sum which

4  exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and

5  in addition, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be

6  determined upon the trial of this matter.

7      50.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

8  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

9  relief as the Court deems proper.

## COUNT II
## NEGLIGENT FAILURE TO ADEQUATELY WARN
### (Against Defendants GSK and McKesson)

14     51.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

15     52.    At all relevant times, defendants GSK and McKesson researched, developed,

16  designed, tested, manufactured, inspected, labeled, and/or distributed, marketed, promoted, sold,

17  and otherwise released into the stream of commerce the pharmaceutical, Avandia, and in the course

18  of same, directly advertised or marketed the product to FDA, consumers or persons responsible for

19  consumers, and therefore had a duty to warn of the risks associated with the use of Avandia.

20     53.    At all relevant times, Avandia was under the exclusive control of the Defendants as

21  aforesaid, and was unaccompanied by appropriate warnings regarding all possible adverse side

22  effects and complications associated with the use of Avandia, dangerous drug-drug interactions and

23  food-drug interactions, and the comparative severity, duration and the extent of the risk of injury

24  with such use.

COMPLAINT AND DAMAGES

54.    At all relevant times, defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of Avandia so that no reasonable medical care provider would have prescribed, or no consumer would have used, Avandia had those facts been made known to such providers and consumers.

55.    At all relevant times, defendants failed to perform or otherwise facilitate adequate testing in that such testing would have shown that Avandia posed serious and potentially life-threatening side effects and complications with respect to which full and proper warning accurately and fully reflecting the symptoms, scope and severity should have been made to medical care providers, the FDA and the public, including Plaintiffs' decedents.

56.    At all relevant times, Avandia, which was researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce by Defendants, was defective due to inadequate post-marketing warning and/or instruction because, after Defendants knew or should have known of the risk of serious and potentially life-threatening side effects and complications from the use of Avandia, Defendants failed to provide adequate warnings to medical care providers, the FDA and the consuming public, including Plaintiffs, and continued to promote Avandia aggressively.

57.    As a direct and proximate result of Defendants' carelessness and negligence, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured.

COMPLAINT AND DAMAGES

1   The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs

2   seek actual and punitive damages from the Defendants as alleged herein.

3       58.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

4   treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

5   relief as the Court deems proper.

## COUNT III
## NEGLIGENCE *PER SE*
(Against Defendants GSK and McKesson)

10      59.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

11      60.    At all times mentioned herein, Defendants GSK and McKesson had an obligation not

12   to violate the law, in the manufacture, design, formulation, compounding, testing, production,

13   processing, assembling, inspection, research, distribution, marketing, labeling, packaging

14   preparation for use, sale and warning of the risks and dangers of the aforementioned product.

15      61.    At all times herein mentioned, Defendants violated the Federal Food, Drug and

16   Cosmetic Act, 21 U.S.C. Section 301 *et seq.*, related amendments and codes and federal regulations

17   provided thereunder, and other applicable laws, statutes and regulations.

18      62.    Plaintiffs' decedents, as purchasers and consumers of the product, are within the

19   class of persons the statutes and regulations described above are designed to protect, and the injuries

20   alleged herein are the type of harm these statutes are designed to prevent.

21      63.    Defendants' acts constitute an adulteration and/or misunderstanding as defined by

22   the Federal Food, Drug and Cosmetics Act, 21 U.S.C. § 331, and constitutes a breach of duty

23   subjecting Defendants to civil liability for all damages arising therefrom, under theories of

24   negligence *per se.*

14

64.    Defendants failed to meet the standard of care set by the applicable statutes and regulations, which were intended for the benefit of individuals such as Plaintiffs' decedents, making Defendants negligent *per se*: (a) the labeling lacked adequate information on the use of the drug Avandia; (b) the labeling failed to provide adequate warnings of severe and disabling medical conditions as soon as there was reasonable evidence of their association with the drug; (c) there was inadequate information for patients for the safe and effective use of Defendants' drug; (d) there was inadequate information regarding special care to be exercised by the doctor for safe and effective use of Defendants' drug; and (e) the labeling was misleading and promotional.

65.    As a direct and proximate result of Defendants' carelessness and negligence, the Plaintiffs' decedents suffered severe and permanent physical injuries.  The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures.  Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity.  The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured.  The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

66.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## NEGLIGENT MISREPRESENTATION
(Against Defendants GSK and McKesson)

67.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

15

68.     Defendants GSK and McKesson, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiffs' decedents, other patients, and the medical community.

69.     Defendants GSK and McKesson, through their misrepresentations, intended to induce justifiable reliance by Plaintiffs' decedents, other patients, and the medical community.

70.     Defendants GSK and McKesson, through their marketing campaign and communications with treating physicians, were in a relationship so close to that of Plaintiffs' decedents and other patients that it approaches and resembles privity.

71.     Defendants GSK and McKesson owed a duty to the medical community, Plaintiffs' decedents, and other consumers, to conduct appropriate and adequate studies and tests for all products, including Avandia, and to provide appropriate and adequate information and warnings.

72.     Defendants failed to conduct appropriate or adequate studies for Avandia.

73.     Defendants failed to exercise reasonable care by failing to conduct studies and tests of Avandia.

74.     As a direct and proximate result of Defendants' carelessness and negligence, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

COMPLAINT AND DAMAGES

75.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT V
## BREACH OF EXPRESS WARRANTY
### (Against Defendants GSK and McKesson)

76.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

77.    Defendants GSK and McKesson expressly represented to Plaintiffs' decedents and other consumers and the medical community that Avandia was safe and fit for its intended purposes, that is was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

78.    Avandia does not conform to Defendants' express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

79.    At all relevant times Avandia did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

80.    Plaintiffs' decedents, other consumers, and the medical community relied upon Defendants' express warranties.

81.    As a direct and proximate result of Defendants' breach of express warranty, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured.

1   The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs

2   seek actual and punitive damages from the Defendants as alleged herein.

3       82.    Defendants' conduct as described above was committed with knowing, conscious,

4   wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

5   consumers such as Plaintiffs' decedents, thereby entitling Plaintiffs to punitive damages so as to

6   punish them and deter it from similar conduct in the future.

7       83.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

8   treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

9   relief as the Court deems proper.

## COUNT VI
## BREACH OF IMPLIED WARRANTY
### (Against Defendants GSK and McKesson)

14       84.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

15       85.    The Defendants GSK and McKesson marketed, distributed, supplied and sold the

16   subject product for the treatment of diabetes.

17       86.    At the time that the Defendants GSK and McKesson marketed, distributed, supplied,

18   and sold Avandia, they knew of the use for which the subject product was intended and impliedly

19   warranted it to be of merchantable quality and safe and fit for such use.

20       87.    The Plaintiffs' decedents, individually and through prescribing physicians,

21   reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

22       88.    The Plaintiffs' decedents were prescribed, purchased, and used the subject product

23   for its intended purpose.

COMPLAINT AND DAMAGES

89.     Due to Defendants' wrongful conduct as alleged herein, the Plaintiffs' decedents could not have known about the nature of the risks and side effects associated with the subject product until after use.

90.     Contrary to the implied warranty for the subject product, Avandia was not of merchantable quality, and was not safe or fit for its intended uses and purposes as alleged herein.

91.     As a direct and proximate result of Defendants' breach of implied warranty, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

92.     WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT VII**
**STRICT PRODUCTS LIABILITY – DEFECTIVE DESIGN**
(Against Defendants GSK and McKesson)

93.     Plaintiffs repeat and reiterate the allegations previously set forth herein.

94.     At all times material to this action, the Defendants were responsible for designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

95.     The subject product is defective and unreasonably dangerous to consumers.

COMPLAINT AND DAMAGES

96.    Avandia is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

97.    At all times material to this action, Avandia was expected to reach, and did reach, consumers in this jurisdiction and through the United States, including the Plaintiffs' decedents herein, without substantial change in the condition in which it was sold.

98.    At all times material to this action, Avandia was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, Avandia contained unreasonably dangerous design defects and was not reasonably safe as intended to be used, subjecting the Plaintiffs' decedents to risks that exceeded the benefits of the subject product, including but not limited to the risks of developing heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects in an unacceptably high number of its users;

b.    When placed in the stream of commerce, Avandia was defective in design and formulation, making the use of Avandia more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other medications and similar drugs on the market for the treatment of diabetes;

c.    The subject product's design defects existed before it left the control of the Defendants;

d.    Avandia was insufficiently tested;

e.    Avandia caused harmful side effects that outweighed any potential utility; and

f. Avandia was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including the Plaintiffs' decedents herein, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendants liable to Plaintiffs, individually and collectively.

99. In addition, at the time the subject product left the control of the Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiffs' decedents' injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk of Plaintiffs' decedents' injuries without substantially impairing the product's utility.

100. As a direct and proximate result of the subject product's defective design, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss, and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek actual and punitive damages from the Defendants as alleged herein.

101. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VIII
## STRICT PRODUCTS LIABILITY – MANUFACTURING AND DESIGN DEFECT
(Against Defendants GSK and McKesson)

21

102.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

103.    At all times material to this action, Defendants were engaged in the business of designing, developing, manufacturing, testing, packaging, promoting, marketing, distributing, labeling, and/or selling Avandia.

104.    At all times material to this action, Avandia was expected to reach, and did reach, consumers in this jurisdiction and throughout the United States, including the Plaintiffs herein without substantial change in the condition in which it was sold.

105.    At all times material to this action, Avandia was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by Defendants in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

a.    When placed in the stream of commerce, Avandia contained manufacturing defects which rendered the product unreasonably dangerous;

b.    The subject product's manufacturing defects occurred while the product was in the possession and control of the Defendants;

c.    The subject product was not made in accordance with the Defendants' specifications and performance standards;

d.    The subject product's manufacturing defects existed before it left the control of the Defendants;

106.    As a direct and proximate result of the subject product's manufacturing defects, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs'

COMPLAINT AND DAMAGES

1  decedents have lost past earnings and have suffered a loss of earning capacity.  The Plaintiffs have

2  suffered economic loss, and have otherwise been physically, emotionally and economically injured.

3  The Plaintiffs' injuries and damages are permanent and will continue into the future.  The Plaintiffs

4  seek actual and punitive damages from the Defendants as alleged herein.

5       107.  WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

6  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

7  relief as the Court deems proper.

**COUNT IX**
**STRICT PRODUCTS LIABILITY – FAILURE TO ADEQUATELY WARN**
(Against Defendants GSK and McKesson)

12       108.  Plaintiffs repeat and reiterate the allegations previously set forth herein.

13       109.  Avandia was defective and unreasonably dangerous when it left the possession of the

14  Defendants in that it contained warnings insufficient to alert consumers, including the Plaintiffs'

15  decedents herein, of the dangerous risks and reactions associated with the subject product, including

16  but not limited to its propensity to cause heart injury, excessive fluid retention, fluid-overload

17  disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and

18  death and other serious injuries and side effects over other forms of diabetes treatment.

19       110.  The Plaintiffs' decedents were prescribed and used the subject product for its

20  intended purpose.

21       111.  The Plaintiffs' decedents could not have discovered any defect in the subject product

22  through the exercise of reasonable care.

23       112.  The Defendants GSK and McKesson, as manufacturers and/or distributors of the

24  subject prescription product, are held to the level of knowledge of an expert in the field.

23

COMPLAINT AND DAMAGES

113. The warnings that were given by the Defendants GSK and McKesson were not accurate, clear and/or were ambiguous.

114. The warnings that were given by the Defendants GSK and McKesson failed to properly warn physicians of the increased risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects.

115. The warnings that were given by the Defendants GSK and McKesson failed to properly warn consumers of the increased risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart leading to cardiac arrest and death and other serious injuries and side effects.

116. The Plaintiffs' decedents, individually and through prescribing physicians, reasonably relied upon the skill, superior knowledge and judgment of the Defendants.

117. The Defendants GSK and McKesson had a continuing duty to adequately warn the Plaintiffs' decedents of the dangers associated with the subject product and of the poor efficacy of the product.

118. Had the Plaintiffs' decedents and/or Plaintiffs' decedents' prescribing physicians received adequate warnings regarding the risks, and the lack of benefits, of the subject product, Plaintiffs' decedents would not have used it.

119. As a proximate result of the subject product's manufacturing defects, the Plaintiffs' decedents suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered

COMPLAINT AND DAMAGES

1  economic loss, and have otherwise been physically, emotionally and economically injured. The

2  Plaintiffs' injuries and damages are permanent and will continue into the future. The Plaintiffs seek

3  actual and punitive damages from the Defendants as alleged herein.

4      120.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

5  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

6  relief as the Court deems proper.

## COUNT X
## FRAUDULENT MISREPRESENTATION
(Against Defendants GSK and McKesson)

11     121.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

12     122.    Defendants GSK and McKesson widely advertised and promoted Avandia as a safe

13  and effective medication both in direct-to-consumer marketing and in fraudulent promotion to the

14  health care providers including Plaintiffs' decedents prescribing physicians.

15     123.    Defendants GSK and McKesson had a duty to disclose material information about

16  serious side effects to consumers such as Plaintiffs. Additionally by virtue of Defendants' partial

17  disclosures about the medication, in which Defendants touted Avandia as safe and effective

18  treatment, Defendants had a duty to disclose all facts about the risks of use associated with the

19  medication, including the potential for the medication to cause heart injury, excessive fluid

20  retention, fluid-overload disease, liver damage, liver failure, stroke and severe injury to the heart

21  leading to cardiac arrest, and death. Defendants intentionally failed to adequately disclose this

22  information for the purpose of inducing consumers, such as Plaintiffs' decedents, to purchase

23  Defendants' dangerous product.

COMPLAINT AND DAMAGES

124.    Had Plaintiffs been aware of the hazards associated with Avandia, Plaintiffs' decedents would not have consumed the product that lead proximately to Plaintiffs' decedents' adverse health effects.

125.    Defendants' advertisements regarding Avandia made material misrepresentations to the effect that Avandia was a safe and effective treatment, which misrepresentations Defendant knew to be false, for the purpose of fraudulently inducing consumers, such as Plaintiffs' decedents, to purchase such product. Plaintiffs' decedents relied in part on these material misrepresentations in deciding to purchase and consume Avandia to their detriment.

126.    The damages sustained by Plaintiffs' decedents were a direct and foreseeable result of, and were proximately caused by Defendants' misrepresentations, concealment and omissions.

127.    Defendants' conduct was willful, wanton, and reckless. Based on the intentionally dishonest nature of Defendants' conduct, which was directed at Plaintiffs' decedents and the public generally, Defendants should also be held liable for punitive damages.

128.    Any applicable statutes of limitation have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs' decedents and other members of the public who were prescribed and who ingested Avandia for the treatment of diabetes have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part, and could not reasonably have discovered the fraudulent nature of Defendants' conduct, and information and documents concerning the safety and efficacy of Avandia. Furthermore, due to the aforesaid allegations, Plaintiffs' decedents may rely on the discovery rule in pursuit of this claim.

129.    By reason of the foregoing, Plaintiffs' decedents sustained damages in a sum which exceeds the jurisdictional limits of all lower courts which would have jurisdiction of this matter, and

1  in addition thereto, Plaintiffs seek punitive and exemplary damages against Defendants in an

2  amount to be determined upon the trial of this matter.

3      130.   WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory,

4  treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other

5  relief as the Court deems proper.

6                              **COUNT XI**

7  **VIOLATIONS OF CALIFORNIA UNFAIR TRADE PRACTICES AND CONSUMER**

8                         **PROTECTION LAW**

9                  (Against Defendants GSK and McKesson)

10

11     131.   Plaintiffs repeat and reiterate the allegations previously set forth herein.

12     132.   Defendants have engaged in unfair competition or unfair or deceptive acts or

13  practices in violation of Cal. Bus. & Prof. Code § 17200, et seq. and the Consumer Legal Remedies

14  Act, Civ. Code § 1750 et seq. ("CLRA")

15     133.   Defendants GSK and McKesson acted, used and employed deception, unfair and

16  deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression

17  and omission of material facts with intent that physicians and medical providers rely upon such

18  concealment, suppression and omission, and for the purpose of influencing and inducing physicians

19  and medical providers to prescribe Avandia, for the treatment of diabetes to patients/consumers

20  such as Plaintiffs' decedents, and causing such patients/consumers to purchase, acquire and use

21  Avandia for the treatment of diabetes, as prescribed by their physicians and medical providers, in

22  connection with the sale and advertisement of the drug Avandia, in violation of California law.

23     134.   By reason of Defendants' acts, uses and employment of deception, unfair and

24  deceptive acts and practices, fraud, false promises, misrepresentations, concealment, suppression

25  and omission of material facts, reasonable patients/consumers acting reasonably, such as Plaintiffs'

27

COMPLAINT AND DAMAGES



1    decedents, were caused to purchase and ingest Avandia, and thereby sustain serious personal

2    injuries.

3        135.    By reason of the foregoing, Plaintiffs sustained damages in a sum which exceeds the

4    jurisdictional limits of all lower courts which would have jurisdiction of this matter, and in addition

5    thereto, Plaintiffs seek punitive and exemplary damages against Defendants in an amount to be

6    determined upon the trial of this matter.

7                            **COUNT XII**
8                        **UNJUST ENRICHMENT**
9                    (Against Defendants GSK and McKesson)
10

11        136.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

12        137.    To the detriment of Plaintiffs' decedents the Defendants GSK and McKesson have

13    been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of,

14    inter alia, payments for Avandia.

15        138.    Plaintiffs' decedents were injured by the cumulative and indivisible nature of the

16    Defendants' conduct. The cumulative effect of the Defendants' conduct directed at physicians and

17    consumers was to artificially create a demand for Avandia at an artificially inflated price. Each

18    aspect of the Defendants' conduct combined to artificially create sales of Avandia.

19        139.    The Defendants GSK and McKesson have unjustly benefited through the unlawful

20    and/or wrongful collection of, inter alia, payments for Avandia and continue to so benefit to the

21    detriment and at the expense of Plaintiffs.

22        140.    Accordingly, Plaintiffs seek full disgorgement and restitution of the Defendants'

23    enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful

24    conduct alleged herein.

141.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT XIII
### WRONGFUL DEATH
(Against Defendants GSK and McKesson)

142.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

143.    As a result of the acts and/or omissions of the Defendants as set forth herein, Plaintiffs' decedents suffered serious emotional and bodily injuries resulting in death.

144.    Plaintiff Rosena Perkins, as designated personal representative of Matthew Perkins, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

145.    Plaintiff Annetta Thrasher as designated personal representative of Vernal Osenton, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

146.    Plaintiff William Wright as designated personal representative of Mary Wright, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

147.    Plaintiff Joan Moore as designated personal representative of Danny Moore, is entitled to recover damages as decedent would have if he were living, as a result of the acts and/or omissions of the Defendants as specifically pled, herein pursuant to Cal. Code Civ. Proc. § 377.60.

COMPLAINT AND DAMAGES

148.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XIV
## SURVIVAL ACTION
(Against Defendants GSK and McKesson)

149.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

150.    As a result of the actions and inactions of the Defendants, Plaintiffs' decedents were caused harm and suffering before their death.

151.    Plaintiffs in their own right and as personal representatives of the decedents' estates seek damages compensable under Cal. Code Civ. Proc. § 377.30.

152.    Plaintiffs are potential beneficiaries of this action as surviving heirs, making them the decedents' successors in interest under Cal. Code Civ. Proc. § 377.30.

153.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT XV
## LOSS OF CONSORTIUM
(Against Defendants GSK and McKesson)

154.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

155.    In cases where Plaintiffs' decedents were married at the time of their respective injuries, the spouses of such Plaintiffs were entitled to their comfort, care, affection, companionship, services, society, advice, guidance, counsel, and consortium.

156.    As a direct and proximate result of one or more of those wrongful acts or omissions of the Defendants described above, Plaintiffs' decedents' spouses have been and will be deprived of

30

their comfort, care, affection, companionship, services, society, advice, guidance, counsel and consortium.

157.    WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**COUNT XVI**
**PUNITIVE DAMAGES**
(Against Defendants GSK and McKesson)

158.    Plaintiffs repeat and reiterate the allegations previously set forth herein.

159.    At all times material hereto, the Defendants GSK and McKesson knew or should have known that the subject product was inherently more dangerous with respect to the risks of heart injury, excessive fluid retention, fluid-overload disease, liver damage, liver failure, stroke, and severe injury to the heart leading to cardiac arrest, and death than alternative treatments for diabetes.

160.    At all times material hereto, the Defendants GSK and McKesson attempted to misrepresent and did misrepresent facts concerning the safety of the subject product.

161.    Defendants'    misrepresentations    included    knowingly    withholding    material information from the medical community and the public, including the Plaintiffs' decedents herein, concerning the safety of the subject product.

162.    At all times material hereto, the Defendants GSK and McKesson knew and recklessly disregarded the fact that Avandia causes debilitating and potentially lethal side effects with greater frequency than safer alternative methods of treatment for diabetes.

163.    Notwithstanding the foregoing, the Defendants GSK and McKesson continued to aggressively market the subject product to consumers, including the Plaintiffs' decedents herein,

31

**COMPLAINT AND DAMAGES**

1   without disclosing the aforesaid side effects when there were safer alternative methods of treatment

2   for diabetes.

3       164.    The Defendants GSK and McKesson knew of the subject product's defective and

4   unreasonably dangerous nature, as set forth herein, but continued to design, develop, manufacture,

5   market, distribute and sell it so as to maximize sales and profits at the expense of the health and

6   safety of the public, including the Plaintiffs' decedents herein, in conscious and/or negligent

7   disregard of the foreseeable harm caused by Avandia.

8       165.    Defendants GSK and McKesson intentionally concealed and/or recklessly failed to

9   disclose to the public, including the Plaintiffs' decedents herein, the potentially life threatening side

10  effects of Avandia in order to ensure continued and increased sales.

11      166.    The Defendants' intentional and/or reckless failure to disclose information deprived

12  the Plaintiffs' decedents of necessary information to enable Plaintiffs' decedents to weigh the true

13  risks of using the subject product against its benefits.

14      167.    As a direct and proximate result of the Defendants' conscious and deliberate

15  disregard for the rights and safety of consumers such as the Plaintiffs, the Plaintiffs' decedents

16  suffered severe and permanent physical injuries. The Plaintiffs' decedents endured substantial pain

17  and suffering and underwent extensive medical and surgical procedures. Plaintiffs' decedents

18  incurred significant expenses for medical care and treatment. Plaintiffs' decedents have lost past

19  earnings and have suffered a loss of earning capacity. The Plaintiffs have suffered economic loss,

20  and have otherwise been physically, emotionally and economically injured. The Plaintiffs' injuries

21  and damages are permanent and will continue into the future. The Plaintiffs seek actual and

22  punitive damages from the Defendants as alleged herein.

168. The aforesaid conduct of Defendants GSK and McKesson was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers, including the Plaintiffs' decedents herein, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish the Defendants and deter them from similar conduct in the future.

169. WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory, treble, and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray for judgment against Defendants as follows:

(1)   Judgment for Plaintiffs and against defendants;

(2)   Damages in the form of compensatory damages in excess of the jurisdictional limits, trebled on all applicable counts;

(3)   Physical pain and suffering of the Plaintiffs

(4)   Pre and post judgment interest at the lawful rate;

(5)   Reasonably attorneys' fees and costs and expert fees;

(6)   A trial by jury on all issues of the case;

(7)   For any other relief as this court may deem equitable and just;

(8)   Restitution of all purchase costs that Plaintiffs paid for Avandia disgorgement of Defendants' profits, and such other relief as provided by law;

(9)   Exemplary and punitive damages in an amount in excess of the jurisdictional limits, trebled on all applicable counts;

(10)  All Bill of Costs elements; and

(11)  Such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable in this action.

33

Dated: May 15, 2008

Respectfully submitted,

*David C. Andersen*

David C. Andersen (Bar No. 194095)
THE MILLER FIRM, LLC
Attorneys for Plaintiffs
108 Railroad Avenue
Orange, VA 22960
Phone: (540) 672-4224
Fax: (540) 672-3055
Email:dandersen@doctoratlaw.com

34

COMPLAINT AND DAMAGES

# EXHIBIT B

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

MAY 2 1 2008

GORDON PARK-LI, Clerk
BY: _____
MARIA SANCHEZ
Deputy Clerk

1   ALAN J. LAZARUS (State Bar No. 129767)
2   KRISTA L. COSNER (State Bar No. 213338)
    DRINKER BIDDLE & REATH LLP
3   50 Fremont Street, 20th Floor
    San Francisco, California 94105
    Telephone: (415) 591-7500
4   Facsimile: (415) 591-7510

5   Attorneys for Defendant
    SMITHKLINE BEECHAM CORPORATION dba
6   GLAXOSMITHKLINE

7

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    FOR THE COUNTY OF SAN FRANCISCO

11  ROSENA PERKINS as Personal              Case No. CGC 08-475435
    Representative of MATTHEW PERKINS
12  (Deceased); ANNETTA THRASHER as         **ANSWER TO COMPLAINT BY**
    Personal Representative of VERNAL       **DEFENDANT SMITHKLINE**
13  OSENTON (Deceased); WILLIAM             **BEECHAM CORPORATION dba**
    WRIGHT as Personal Representative of    **GLAXOSMITHKLINE**
14  MARY WRIGHT (Deceased); JOAN
    MOORE as Personal Representative of
15  DANNY MOORE (Deceased),

16                      Plaintiffs,

17          v.

18  SMITHKLINE BEECHAM
    CORPORATION dba
19  GLAXOSMITHKLINE and McKESSON
    CORPORATION,

20                      Defendants.

21

22                        **INTRODUCTION**

23          Defendant SMITHKLINE BEECHAM CORPORATION dba

24  GLAXOSMITHKLINE ("GSK"), by and through counsel, hereby responds to the

25  allegations set forth by ROSENA PERKINS, ANNETTA THRASHER, WILLIAM

26  WRIGHT, and JOAN MOORE ("Plaintiffs") in THEIR Complaint for Damages (the

27  "Complaint") as follows:

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

## GENERAL DENIAL

By virtue of the provisions of California Code of Civil Procedure §431.30, Defendant generally denies each and every allegation in the unverified Complaint that relates to or is directed to Defendant or any of its alleged agents, servants or employees. Defendant further denies that Plaintiffs have been damaged to any extent or amount or is entitled to any relief whatsoever from Defendant.

Defendant additionally denies that there is any law, fact, theory or contractual or legal relationship under which Plaintiffs are entitled to damages in any amount by the answering Defendant.

Defendant further alleges the following affirmative defenses to Plaintiffs' Complaint:

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

### (Improper Venue)

Venue is improper.

## SECOND AFFIRMATIVE DEFENSE

### (Insufficiency of Process and Insufficiency of Service of Process)

Process and service of process are insufficient under California law.

## THIRD AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

## FOURTH AFFIRMATIVE DEFENSE

### (Preemption/Primary Jurisdiction)

Plaintiffs' claims are barred and/or this Court should defer this matter, in whole or in part, pursuant to the doctrine of primary jurisdiction, in that the FDA is charged under the law with regulating prescription drugs, including Avandia®, and is specifically charged with determining the content of the warnings and labeling for prescription drugs.

1  The granting of the relief prayed for in the Plaintiffs' Complaint would impede, impair,

2  frustrate or burden the effectiveness of such federal law and would violate the Supremacy

3  Clause (Art. VI, cl. 2) of the United States Constitution.

## FIFTH AFFIRMATIVE DEFENSE

### (Statute of Limitations/Repose)

6  Discovery may show that Plaintiffs' claims are barred, in whole or in part, by

7  applicable statutes of limitations, statutes of repose, the doctrine of laches and/or as a

8  result of the failure to allege and/or comply with conditions precedent to applicable

9  periods of limitations and repose.

## SIXTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

12  Plaintiffs knowingly and voluntarily assumed any and all risks as to matters

13  alleged in the Complaint, and such assumption of the risk bars in whole or in part the

14  damages Plaintiffs seek to recover herein.

## SEVENTH AFFIRMATIVE DEFENSE

### (Contributory/Comparative Negligence)

17  At all times mentioned herein, Plaintiffs were negligent, careless, and at fault and

18  conducted themselves so as to contribute substantially to any alleged risk of injuries and

19  damages. Said negligence, carelessness and fault of Plaintiffs bars in whole or in part the

20  damages which Plaintiffs seek to recover herein.

## EIGHTH AFFIRMATIVE DEFENSE

### (Equitable Defenses)

23  Plaintiffs' claims are barred by the doctrine of laches, estoppel, waiver, unclean

24  hands and/or failure to preserve evidence.

## NINTH AFFIRMATIVE DEFENSE

### (Improper Party Defendant)

27  McKesson is not a proper party defendant to this action. McKesson was not

28  involved with Avandia®, a product of GSK.

## TENTH AFFIRMATIVE DEFENSE

### (Improper Plaintiffs)

This Complaint improperly joins multiple plaintiffs.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Intervening, Superseding Cause)

The damages allegedly sustained by Plaintiffs, if any, were not legally caused by Defendant, but instead were legally caused by intervening and superseding causes or circumstances.

## TWELFTH AFFIRMATIVE DEFENSE

### (Pre-existing Condition or Idiosyncratic Reaction)

The risk of injuries, if any, resulted from a pre-existing and/or related medical condition and/or idiosyncratic reaction and not from any act or omission by or on behalf of Defendant.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Fault of Others)

Plaintiffs' alleged injuries, losses, or damages, if any, were caused by the actions negligence, carelessness, fault, strict liability, or omissions of third parties for which Defendant has no control or responsibility.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Learned Intermediary)

Plaintiffs' claims are barred in whole or in part by the learned-intermediary doctrine.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Compliance with FDA Regulations)

At all times relevant, the product was in accordance with and pursuant to all applicable statutes and regulations, including those of the Food and Drug Administration.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Immunity for Prescription Drugs and Medical Devices)

The Complaint and each cause of action thereof are barred by the doctrine of immunity for prescription drugs and medical devices, by the Commerce Clause, Article I, Section 8, of the Constitution of the United States as an undue burden upon interstate commerce and/or by the preemption doctrine in that Plaintiffs have asserted claims for relief which, if granted, would constitute an impermissible burden by this court on federal laws, regulations and policy relating to the development and marketing of prescription drugs and medical devices in violation of the Supremacy Clause, Article IV, Clause 2 of the Constitution of the United States.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Restatements of Torts)

Defendant affirmatively pleads the application of the Restatement (Second) of Torts: Products Liability § 402A and comments thereto, and/or the Restatement (Third) of Torts: Products Liability §§ 2, 4 and 6 and comments thereto. Adequate warnings and complete warnings were provided to Plaintiffs' prescribing physician, and therefore, the product was not defective or unreasonably dangerous.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (State of the Art)

At all times material hereto, Defendant's conduct and GSK's product, Avandia®, conformed to the state of the art.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Limitations on Punitive Damages)

With respect to Plaintiffs' demand for punitive or exemplary damages, Defendant specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards, including but not limited to, those standards of limitation which arose in *BMW of North America v. Gore*, 517 U.S. 559 (1996), *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1   (2001), and *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003),

2   and *Philip Morris USA v. Williams*, 127 S.Ct. 1057 (2007).

3                          **TWENTIETH AFFIRMATIVE DEFENSE**

4                      **(Punitive and Exemplary Damages Not Proper)**

5          Plaintiffs' claim for punitive damages violates, and it is therefore barred by, the

6   Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the Constitution of the

7   United States of America on grounds including the following:

8          a.      it is a violation of the Due Process and Equal Protection Clauses of the

9   Fourteenth Amendment to the United States Constitution to impose punitive damages,

10  which are penal in nature, against a civil defendant upon the Plaintiffs satisfying a burden

11  of proof which is less than the "beyond a reasonable doubt" burden of proof required in

12  criminal cases;

13         b.      the procedures pursuant to which punitive damages are awarded may result

14  in the award of joint and several judgments against multiple defendants for different

15  alleged acts of wrongdoing, which infringes upon the Due Process and Equal Protection

16  Clauses of the Fourteenth Amendment to the United States Constitution;

17         c.      the procedures pursuant to which punitive damages are awarded fail to

18  provide a reasonable limit on the amount of the award against defendant, which thereby

19  violates the Due Process Clause of the Fourteenth Amendment to the United States

20  Constitution;

21         d.      the procedures pursuant to which punitive damages are awarded fail to

22  provide specific standards for the amount of the award of punitive damages which

23  thereby violates the Due Process Clause of the Fourteenth Amendment to the United

24  States Constitution;

25         e.      the procedures pursuant to which punitive damages are awarded result in

26  the imposition of different penalties for the same or similar acts, and thus violate the

27  Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

28

1        f.       the procedures pursuant to which punitive damages are awarded permit the

2 imposition of punitive damages in excess of the maximum criminal fine for the same or

3 similar conduct, which thereby infringes upon the Due Process Clause of the Fifth and

4 Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment

5 to the United States Constitution;

6        g.       the procedures pursuant to which punitive damages are awarded permit the

7 imposition of excessive fines in violation of the Eighth Amendment to the United States

8 Constitution;

9        h.       the award of punitive damages to Plaintiffs in this action would constitute a

10 deprivation of property without due process of law; and

11        i.       the procedures pursuant to which punitive damages are awarded permit the

12 imposition of an excessive fine and penalty

13                     **TWENTY-FIRST AFFIRMATIVE DEFENSE**

14                           **(No Failure to Warn)**

15       Defendant at all times discharged any duty to warn through appropriate and

16 adequate warnings in accordance with federal statutes and regulations and with the then-

17 existing states of medical and scientific knowledge.

18                 **TWENTY-SECOND AFFIRMATIVE DEFENSE**

19               **(Failure to Plead Fraud with Particularity)**

20       Plaintiffs have failed to plead a cause of action for fraud as they have not set forth

21 allegations of fraud with the requisite particularity.

22                  **TWENTY-THIRD AFFIRMATIVE DEFENSE**

23                     **(Product Safety)**

24       At all times relevant, Avandia® was not unreasonably dangerous or defective.

25                 **TWENTY-FOURTH AFFIRMATIVE DEFENSE**

26               **(Failure to Join Necessary Party)**

27       Complete relief cannot be accorded among those already parties and, in the

28 alternative, the disposition of this action without the presence of additional, unnamed

persons may result in Defendant being subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Set Off)

Defendant pleads as a set off any monies received by Plaintiffs for injuries or damages attributed to the subject incident, including, but not limited to, any insurance proceeds.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

Defendant asserts that its conduct did not cause, proximately cause, solely cause, or solely proximately cause the injuries and/or damages alleged by Plaintiffs.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

### (Good Faith)

Defendant's acts were at all times done in good faith and without malice, with respect to each and every purported cause of action in Plaintiffs' Complaint.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Unintentional Acts)

Any alleged act or omission by Defendant concerning the manufacture, distribution, marketing, and/or sale of Avandia® and/or any other conduct in relation thereto was at all times unintentional and resulted from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid any such error, and Defendant made an appropriate correction, repair, replacement, or remedy to the goods once notified of the error.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Conformity with Medical Knowledge)

With respect to each and every purported cause of action in Plaintiffs' Complaint, Defendant alleges that the methods, standards, and techniques in the preparation of GSK's product, Avandia®, were and are in conformity with the generally recognized

1    state of medical knowledge, common and accepted procedure in the medical field, and

2    state of the art at the time of their preparation.

3                    ### THIRTIETH AFFIRMATIVE DEFENSE

4                            **(Equitable Indemnity)**

5        In the event Defendant is held liable to Plaintiffs, which liability is expressly

6    denied, and any other entity is also found liable, Defendant is entitled to a percentage

7    contribution of the total liability from said entity in accordance with principles of

8    equitable indemnity and comparative contribution.

9                   ### THIRTY-FIRST AFFIRMATIVE DEFENSE

10                            **(Proposition 51)**

11       The liability of Defendant, if any, for Plaintiffs' non-economic loss must be

12   apportioned in accordance with the provisions of California Civil Code § 1431.2

13   ("Proposition 51").

14                 ### THIRTY-SECOND AFFIRMATIVE DEFENSE

15                       **(Failure to Mitigate Damages)**

16       Plaintiffs' damages, if any, are barred in whole or in part by Plaintiffs' failure to

17   mitigate such damages.

18                  ### THIRTY-THIRD AFFIRMATIVE DEFENSE

19                     **(No Notice of Breach of Warranty)**

20       Plaintiffs failed to give notice of any alleged breach of warranty.

21                 ### THIRTY-FOURTH AFFIRMATIVE DEFENSE

22                        **(Disclaimer of Warranty)**

23       Defendant alleges that any and all warranties that may form a basis for Plaintiffs'

24   claims for relief were adequately disclaimed as stated by Defendant.

25                  ### THIRTY-FIFTH AFFIRMATIVE DEFENSE

26                       **(No Reliance on Warranties)**

27       Defendant denies that Plaintiffs relied on any warranties alleged in the Complaint.

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\400399\1

                                    9

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (Unavoidable Circumstances)

The alleged injuries and/or damages of Plaintiffs, if any, were the result of unavoidable circumstances that could not have been prevented by anyone.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (Misuse)

If Plaintiffs sustained injuries or risk of injuries in this action, which allegations are expressly denied, the injuries or risk of injuries were solely caused by and attributable to the unintended, unreasonable, and improper use which Plaintiffs made of the product.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (No Strict Liability for Prescription Drugs)

The strict liability causes of action of Plaintiffs' Complaint are subject to the limitations placed upon the doctrine of strict product liability for a purported design defect as set forth in *Brown v. Superior Court*, 44 Cal. 3d. 1049 (1988) and its progeny.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (*Buckman v. Plaintiffs' Legal Community*)

To the extent Plaintiffs' claims are based on alleged misrepresentations or omissions made to the FDA, such claims are barred pursuant to *Buckman v. Plaintiffs' Legal Community*, 531 U.S. 341 (2001).

## FORTIETH AFFIRMATIVE DEFENSE

### (Standing)

Plaintiffs lack standing to bring some or all of the claims alleged in the Complaint.

## FORTY-FIRST AFFIRMATIVE DEFENSE

### (Unconstitutional Claims)

Defendant alleges that granting Plaintiffs' requested relief under California Business and Professions Code § 17200 et seq. and 17500 et seq. ("BPC 17200 and 17500"), would violate Defendant's rights under the United States and California constitutions.

1

## FORTY-SECOND AFFIRMATIVE DEFENSE

2

### (Adequate Remedy at Law)

3      Plaintiffs' causes of action under BPC 17200 and 17500, and the remedies sought

4  there under, are barred because there is an adequate remedy at law.

5

## FORTY-THIRD AFFIRMATIVE DEFENSE

6

### (Unjust Enrichment)

7      Any and all BPC 17200 and 17500 claims are barred, in whole or in part, on the

8  basis that Plaintiffs would be unjustly enriched if allowed to recover damages there

9  under.

10

## FORTY-FOURTH AFFIRMATIVE DEFENSE

11

### (Remedies for Third Parties Barred)

12      Plaintiffs' causes of action under BPC 17200 and 17500 and the remedies sought

13  there under, are barred because Plaintiffs seek remedies for parties that have not been

14  injured and there are no identifiable injured parties.

15

## FORTY-FIFTH AFFIRMATIVE DEFENSE

16

### (Plaintiffs not Competent Party)

17      Plaintiffs' causes of action under BPC 17200 and 17500 and the remedies sought

18  thereunder, are barred because the Complaint has not been filed by competent Plaintiffs

19  for the benefit of injured parties.

20

## FORTY-SIXTH AFFIRMATIVE DEFENSE

21

### (Administrative or Regulatory Schemes Bar Recovery/Abstention)

22      Plaintiffs' causes of action under BPC 17200 and 17500 and the remedies sought

23  thereunder, are barred by the existence of a comprehensive administrative or regulatory

24  scheme which would redress the actions complained of by Plaintiffs. This Court should

25  dismiss or stay Plaintiffs' BPC 17200 and 17500 claims in deference to this

26  administrative or regulatory scheme.

27

28

## FORTY-SEVENTH AFFIRMATIVE DEFENSE

### (Choice of Law)

(a)    Plaintiffs' claims are not governed by the laws of the State of California.

(b)    Defendant is entitled to the benefit of all defenses and presumptions contained in, or arising from, any rule of law or statute of any other state whose substantive law might control the action.

## FORTY-EIGHTH AFFIRMATIVE DEFENSE

### (Other Defenses)

Defendant hereby gives notice that it intends to rely upon any other affirmative defenses pled by any other defendant and not pled by it in this action to the extent they do not conflict with Defendant's own affirmative defenses. Defendant reserves it right to amend its Answer to assert any additional defenses and matters in avoidance that may be disclosed during the course of additional investigation and discovery.

## JURY DEMAND

Defendant requests a trial by jury of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Defendant prays:

1.    That the Complaint be dismissed with prejudice as to the answering Defendant and that judgment be entered in their favor;

2.    For costs of suit incurred herein;

3.    And for such other relief as the Court may deem just and appropriate.

Dated: May 21, 2008

DRINKER BIDDLE & REATH LLP

KRISTA L. COSNER

Attorneys for Defendant
SMITHKLINE BEECHAM
CORPORATION dba
GLAXOSMITHKLINE

1

## CERTIFICATE OF SERVICE

2

3          I, LEE ANN L. ALLDRIDGE, declare that:

4          I am at least 18 years of age, and not a party to the above-entitled action. My
business address is 50 Fremont Street, 20th Floor, San Francisco, California 94105,
Telephone: (415) 591-7500.

5

6          On May 21, 2008, I caused to be served the following document(s):

7     **ANSWER TO COMPLAINT BY DEFENDANT SMITHKLINE BEECHAM
CORPORATION dba GLAXOSMITHKLINE**

8

9     by enclosing a true copy of (each of) said document(s) in (an) envelope(s), addressed as
follows:

10    ☑    BY MAIL:  I am readily familiar with the business' practice for collection and
processing of correspondence for mailing with the United States Postal Service.  I
11         know that the correspondence is deposed with the United States Postal Service on
the same day this declaration was executed in the ordinary course of business.  I
12         know that the envelope was sealed, and with postage thereon fully prepaid, placed
for collection and mailing on this date, following ordinary business practices, in the
13         United States mail at San Francisco, California.

14    ☐    BY PERSONAL SERVICE:  I caused such envelopes to be delivered by a
messenger service by hand to the address(es) listed below:

15

16    ☐    BY OVERNIGHT DELIVERY:  I enclosed a true copy of said document(s) in a
Federal Express envelope, addressed as follows:

17    ☐    BY FACSIMILE:  I caused such documents to be transmitted by facsimile
transmission and mail as indicated above.

18

19         David C. Andersen
THE MILLER FIRM, LLC
20         108 Railroad Avenue
Orange, VA 22960
21         Telephone:  (540) 672-4224
Facsimile:  (540) 672-3055
22

23         I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

24

25         Executed on May 21, 2008 at San Francisco, California.

26                                              LEE ANN L. ALLDRIDGE

27

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Fl
San Francisco, CA  94105

# EXHIBIT C

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

*7:23 am, Oct 16, 2007*

FILED
CLERK'S OFFICE

# MDL 1871

### UNITED STATES JUDICIAL PANEL
on
### MULTIDISTRICT LITIGATION

IN RE: AVANDIA MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

| | | |
|---|---|---|
| Sharon Ann Dabon v. GlaxoSmithKline, Inc., | ) | |
| E.D. Louisiana, C.A. No. 2:07-3041 | ) | MDL No. 1871 |
| Celenio Cruz-Santana v. GlaxoSmithKline, PLC, et al., | ) | |
| D. Puerto Rico, C.A. No. 3:07-1461 | ) | |

### TRANSFER ORDER

**Before the entire Panel***: Plaintiff in the action pending in the Eastern District of Louisiana, has moved, pursuant to 28 U.S.C. § 1407, to centralize this litigation in the District of Puerto Rico or, alternatively, in the Eastern District of Louisiana. This litigation currently consists of moving plaintiff's action and one action pending in the District of Puerto Rico.[1] Plaintiff in the latter action supports centralization in the District of Puerto Rico. Plaintiffs in potential tag-along actions pending in the Central District of California, the Southern District of Florida, the District of New Jersey, the Southern District of New York, and the District of Puerto Rico have submitted responses in support of centralization. These plaintiffs suggest a variety of fora for transferee district, including the Southern District of Florida (favored by plaintiffs in the action pending in that district), the District of New Jersey (favored by plaintiff in the action pending in that district, as well as plaintiff in the Central District of California action), the Southern District of New York (favored by plaintiffs in eight actions pending in that district), and the District of Puerto Rico (favored by plaintiffs in the action pending in that district). Responding defendant SmithKlineBeecham Corp. d/b/a GlaxoSmithKline (GSK) initially opposed the Section 1407 motion, but now supports centralization in the Eastern District of Pennsylvania.

---

*      Judge Heyburn took no part in the disposition of this matter.

[1]      The Panel has been notified of 28 additional related actions pending in the Western District of Arkansas, the Central District of California (two actions), the Southern District of Florida (two actions), the Southern District of Illinois, the Southern District of Indiana, the Eastern District of Louisiana, the District of New Jersey, the Eastern District of New York, the Southern District of New York (ten actions), the Northern District of Ohio, the Eastern District of Oklahoma, the Eastern District of Pennsylvania, the District of Puerto Rico, the Eastern District of Tennessee, the Western District of Tennessee, and the Eastern District of Texas (two actions). These actions and any other related actions will be treated as potential tag-along actions. *See* Rules 7.4 and 7.5, R.P.J.P.M.L., 199 F.R.D. 425, 435-36 (2001).

OFFICIAL FILE COPY

IMAGED OCT 1 6 2007

- 2 -

On the basis of the papers filed and hearing session held, we find that these actions involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Pennsylvania will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Both actions arise from allegations that certain diabetes drugs manufactured by GSK – Avandia and/or two sister drugs containing Avandia (Avandamet and Avandaryl) – cause an increased risk of heart attack and other physical injury, and that GSK failed to provide adequate warnings concerning that risk. Centralization under Section 1407 will eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

We are also persuaded that the Eastern District of Pennsylvania is an appropriate transferee district for pretrial proceedings in this litigation. GSK's principal place of business is located in that district, and thus many witnesses and documents relevant to the litigation are likely to be found there. In addition, one of the potential tag-along actions was commenced in the Eastern District of Pennsylvania.

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. § 1407, the two actions are transferred to the Eastern District of Pennsylvania and, with the consent of that court, assigned to the Honorable Cynthia M. Rufe for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

D. Lowell Jensen
Acting Chairman

| | |
|---|---|
| John G. Heyburn II, Chairman* | J. Frederick Motz |
| Robert L. Miller, Jr. | Kathryn H. Vratil |
| David R. Hansen | Anthony J. Scirica |

**EXHIBIT D**

1   DONALD F. ZIMMER, JR. (State Bar No. 112279)
    KRISTA L. COSNER (State Bar No. 213338)
2   DRINKER BIDDLE & REATH LLP
    50 Fremont Street, 20ᵗʰ Floor
3   San Francisco, California 94105
    Telephone: (415) 591-7500
4   Facsimile: (415) 591-7510

5   Attorneys for Defendants
    SMITHKLINE BEECHAM CORPORATION dba
6   GLAXOSMITHKLINE and McKESSON
    CORPORATION
7

8                   UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11

12  | F.C. MITCHELL and MITSUKO | Case No. |
    | MITCHELL, husband and wife; MARY | |

13  RYON and JAMES RYON, wife and **DECLARATION OF GREG YONKO IN**
    husband; CARL HOUSTON and ALICE **SUPPORT OF NOTICE OF REMOVAL**
14  HOUSTON, husband and wife; JOSEPH **AND REMOVAL ACTION, UNDER 28**
    WOODS, SR. and BILLIE WOODS, **U.S.C. § 1441(B) (DIVERSITY) and 28**
15  husband and wife; DONALD WINTERS **U.S.C. § 1441(C) (FEDERAL**
    and KELLEY WINTERS, husband and **QUESTION) OF DEFENDANT**
16  wife; RAY STOCK, as surviving statutory **SMITHKLINE BEECHAM**
    beneficiary for the wrongful death of **CORPORATION dba**
17  JOLENE STOCK; WILMA POLLARD, as **GLAXOSMITHKLINE**
    surviving statutory beneficiary for the
18  wrongful death of KENNETH POLLARD,

19                  Plaintiffs,

20      v.

21  GLAXOSMITHKLINE, a Pennsylvania
    corporation; MCKESSON
22  CORPORATION, a California Corporation;
    and DOES 1-50,
23
                    Defendants.
24

25      I, GREG YONKO, declare:

26      1.      I am Senior Vice President - Purchasing for McKesson Corporation

27  ("McKesson"), and make this declaration in support of the Notice of Removal and

28  Removal Action of defendant SmithKline Beecham Corporation dba GlaxoSmithKline

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

1  ("GSK") based on my personal knowledge.

2        2.     I have been in my current position since 1997, and have been employed by

3  McKesson for over 25 years. As Vice President of Purchasing, I am responsible for

4  purchasing prescription and non-prescription branded product management and

5  investment purchasing.

6        3.     McKesson was and is a Delaware corporation, with its principal place of

7  business in San Francisco, California.

8        4.     McKesson was served with the Summons and Complaint in this action on

9  February 11, 2008.

10        5.     McKesson consents to the removal of this action.

11        6.     McKesson is a wholesale distributor of pharmaceuticals, over-the-counter

12  and health and beauty products to chains, independent pharmacy customers and hospitals.

13  As a wholesale distributor, McKesson distributes products manufactured by others. As to

14  Avandia®, McKesson does not manufacture, produce, process, test, encapsulate, label, or

15  package, these products, nor does it make any representations or warranties as to the

16  product's safety or efficacy.

17        7.     McKesson distributed Avandia®, manufactured by GSK, along with many

18  other products of other pharmaceutical companies, to certain drug stores, pharmacies,

19  health care facilities and hospitals throughout the United States. As stated above,

20  McKesson did not manufacture, produce, process, test, encapsulate, label, or package

21  Avandia®, but only delivered the unopened boxes that contained the drug.

22        8.     McKesson is one of many suppliers who could have supplied Avandia® to

23  the numerous pharmacies throughout the United States.

24       I declare under penalty of perjury under the laws of the State of California that the

25  foregoing is true and correct, and this declaration was executed on March 5, 2008 in

26  San Francisco, California.

27

28                              GREG YONKO

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

DECLARATION OF GREG YONKO IN SUPPORT OF REMOVAL    CASE NO.

2